UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 25-50181 |
| Plaintiff, | UNITED STATES' RESPONSE TO DEFENDANT'S MEMORANDUM |
| vs. | |
| FRANKLIN LONG BLACK CAT, | |
| Defendant. | |

The United States of America, by and through Assistant United States Attorney Benjamin Schroeder, submits the following response to Defendant's memorandum at Doc. 39.

**Background**

Defendant was charged by indictment with assaulting a federal officer, Andrew Bickel, in Count I, threatening to murder a federal officer, Jamin Hartland, in Count II, and threatening to murder a federal officer, Jeff Donovan, in Count III. Doc. 1. A jury returned a guilty verdict on all three counts. Doc. 37. Evidence at trial showed that Defendant made a threatening statement to both Hartland and Donovan while looking up at them.

At the close of evidence, Defendant requested dismissal of Count II or III, asserting under *Ladner v. United States*, 358 U.S. 169 (1958), the indictment was multiplicitous as it relates to Counts II and III because they involved a single threat to Hartland and Donovan. This Court held the matter in abeyance for after the verdict but before a judgment is rendered, requesting the parties brief

the matter. The Court noted *Ladner* considered legislative history in its analysis and asked the parties to bring forth any relevant legislative history of 18 U.S.C. § 115 that would be relevant to this inquiry.

Defendant characterizes his request as a motion for judgment of acquittal under Fed. R. Crim. P. 29: "At the close of the government's case, defendant moved for judgment of acquittal on either count 2 or count 3 because they were multiplicitious [sic] under the United States Supreme Court's reasoning in *Ladner v. United States*, 358 U.S. 169 (1958). Defendant renewed his motion after the jury delivered guilty verdicts on all counts." Doc. 39. Defendant's request is better understood as a motion to dismiss, as that is the appropriate vessel to remedy a multiplicitous indictment under Fed. R. Crim. P. 12(b)(3)(ii). *See, e.g., United States v. Kazenbach*, 824 F.2d 649, 650 (8th Cir. 1987) (when asserting multiplicity, "appellant filed a motion to dismiss the indictment"); *United States v. Street*, 66 F.3d 969, 974 (8th Cir. 1995) (same). The Rule 29 standard has no application to the legal question of multiplicity.

In *Ladner*, the defendant was convicted of two separate counts of an older version of assault on a federal officer on two separate officers, with sentences that ran consecutive to one another. 358 U.S. at 171 n.2. After having served time for the sentence on one count, the defendant filed a petition for habeas-corpus relief, alleging that "the evidence at his trial showed that he fired a single discharge from a shotgun into the front seat of an automobile and that the pellets wounded the two federal officers" and as a result, "he was guilty of but one

'assault' . . . and accordingly was subject to only one punishment." *Id.* at 171. The Court framed the issue: "[d]id Congress mean that the single discharge of a shotgun would constitute one assault, and thus only one offense, regardless of the number of officers affected, or did Congress define a separate offense for each federal officer affected by the doing of the act?" *Id.* at 173. The Court held "that the single discharge of a shotgun alleged by the petitioner in this case would constitute only a single violation of" the older version of assault on a federal officer. *Id.* at 178.

Defendant's requested relief should be denied because Counts II and III each contain conduct by Defendant that are distinct from one another—his specific intent relating to each victim. While Defendant maintains there was a single threat, the jury, by finding Defendant guilty, found Defendant guilty of two threats.

**Authority**

"An indictment is multiplicitous if it charges a single offense in multiple counts." *United States v. Roy*, 408 F.3d 484, 491 (8th Cir. 2005) (citing *States v. Christner,* 66 F.3d 922, 927 (8th Cir. 1995)). "The main difficulty with such an indictment is that the jury can convict the defendant on both counts, subjecting the defendant to two punishments for the same crime in violation of the double-jeopardy clause of the fifth amendment." *United States v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005).

3

To demonstrate multiplicity, "a defendant must show that the two offenses charged are in law and fact the same offense." *United States v. Roy*, 408 F.3d 484, 491 (8th Cir. 2005) (quoting *United States v. Bennett,* 44 F.3d 1364, 1368 (8th Cir. 1995)).

"When the same statutory violation is charged twice, the question is whether Congress intended the facts underlying each count to make up a separate unit of prosecution." *United States v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005). "The unit of prosecution is the aspect of criminal activity that Congress intended to punish." *United States v. Chipps*, 410 F.3d 438, 448 (8th Cir. 2005). "We look to the statutory language, legislative history, and statutory scheme to ascertain what Congress intended the unit of prosecution to be." *United States v. Chipps*, 410 F.3d 438, 448 (8th Cir. 2005) (citing *United States v. Kinsley,* 518 F.2d 665, 668 (8th Cir. 1975)). "When Congress fails to establish the unit of prosecution 'clearly and without ambiguity,' we resolve doubt as to congressional intent in favor of lenity for the defendant." *United States v. Chipps*, 410 F.3d 438, 448 (8th Cir. 2005) (quoting *United States v. Bell*, 349 U.S. 81, 83–84 (1955)).

## Argument

Counts II and III are not multiplicitous because they required two distinct findings of fact by the jury concerning Defendant's conduct, thereby making Counts II and III separate offenses. The key distinction between the multiplicity argument in this case and *Ladner* is that *Ladner* delt with assault on a federal

officer, which is a general-intent crime, with identical conduct by the defendant for each count, whereas Counts II and III, threatening to murder a federal officer, charge specific-intent crimes, which each requires separate conduct by Defendant toward each victim.  *See United States v. Gustus*, 926 F.3d 1037, 1040 (8th Cir. 2019) (citing *United States v. Hanson*, 618 F.2d 1261 (8th Cir. 1980)) ("assaulting a federal employee is a general-intent crime").  Count II required that the jury find Defendant's threat to murder Hartland was made "with the intent to impede, intimidate, or interfere *with Hartland*."  Doc. 27 at 4 (emphasis added).  Count III required that the jury find Defendant's threat to murder Donovan was made "with the intent to impede, intimidate, or interfere *with Donovan*."  Doc. 27 at 4 (emphasis added).  These requirements demonstrate that Counts II and III are independent of one another as separate offenses because each has a separate *mens rea* requirement for Defendant to have had for each offense.

**Statutory Language**

To determine congressional intent for the unit of prosecution, the statute first must be examined:

> (a)(1) Whoever-- . . . (B) threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere *with such official, judge, or law enforcement officer* while engaged in the performance of official duties, or with intent to retaliate *against such official, judge, or law enforcement officer* on account of the performance of official duties, shall be punished as provided in subsection (b).

18 U.S.C. § 115. The unit of prosecution is unambiguous: each law-enforcement officer a defendant specifically intends to impede, intimidate, interfere, or retaliate against, by his threatening conduct, constitutes a separate violation of the statute. The language, "such . . . law enforcement officer," requires the violation to be tethered to a specific officer that a defendant specifically intends his conduct will have a certain effect on.

"When looking at the language of a statute, however, we also consider interpretive canons, one of which provides that, 'absent contrary indications,' Congress is presumed to have adopted 'the common law definition of statutory terms.'" *United States v. Chipps*, 410 F.3d 438, 448 (8th Cir. 2005) (quoting *United States v. Shabani,* 513 U.S. 10, 13, 115 S. Ct. 382, 130 L.Ed.2d 225 (1994)). Common law shows that the nature of a threat is uniquely victim centric. That is because whether a threat constitutes a "true threat," depends on the viewpoint of an objective victim: "To determine what constitutes a 'true threat,' '[the fact-finder] must view the relevant facts to determine whether the recipient of the alleged threat could reasonably conclude that it expresses a determination or intent to injure presently or in the future.'" *United States v. Ivers*, 967 F.3d 709, 718 (8th Cir. 2020) (alteration in original) (quoting *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 621-22 (8th Cir. 2002) (en banc)). Accordingly, a threat is not a threat unless it has a specific victim. A threat has two components: (1) threatening conduct; and (2) a unique victim perceiving that threatening conduct. The unit of prosecution here is the threat, but each threat

itself is defined in relation to a single victim. Therefore, here, the jury found Defendant made two separate threats. This is in line with the Seventh Circuit's determination in *United States v. Haas*, 37 F.4th 1256, 1261 (7th Cir. 2022), which determined the unit of prosecution on a victim suffering several instances of threatening conduct is an individual threat over the broader scheme of threats.

Furthermore, Hartland and Donovan each testified how Defendant looked at them when he threatened to murder them. Whereas the *Ladner* Court identified a single discharge of the firearm to be the sole act, here Defendant made a verbal statement and looked at both Hartland and Donovan to effectuate his threats to them. Beyond having a separate specific intent concerning each victim, Defendant also effectuated the two threats separately by directing his words at both victims with where he looked and directed his threatening conduct.

Whether Defendant made one or two threats was a question for the jury to decide, and they decided Defendant made a threat to each, with the specific intent to affect each victim in one of the enumerated ways under the statute. A threatening statement is not like a discharged gun that can hit several people with just one action. A threatening statement can be directed at several people with further threatening conduct—such as when Defendant looked at Donovan and Hartland when saying it, along with the intent to affect them each.

*Ladner* discussed the concerns of its older assault-on-federal-officer statute:

> For example, the locking of the door of a building to prevent the entry of officers intending to arrest a person within would be an act of hindrance denounced by the statute. We cannot find clearly from the statute, even when read in the light of its legislative history, that the Congress intended that the person locking the door might commit as many crimes as there are officers denied entry.

*Ladner v. United States*, 358 U.S. 169, 176 (1958). In the § 115 context, this concern is allayed because Congress has expressly shown its intent by requiring a finding that Defendant had the specific intent to affect a particular victim in order for Defendant to be in violation of the statute.

**Legislative History and Statutory Scheme**

These two often offer the least aid in determining a unit of prosecution. *See, e.g., United States v. Chipps*, 410 F.3d 438, 449 (8th Cir. 2005) (citation omitted) (quoting *United States v. Kinsley,* 518 F.2d 665, 669–70) ("We turn now to the legislative history and the statutory scheme. We have not found any suggestion in the legislative history that Congress took a position on the question facing us. The statutory scheme, '*i.e.,* the congressional intent as manifested in the overall legislative plan,' similarly sheds no light on whether Congress meant to punish assault as a course of conduct or separate acts").

Section 115 was originally enacted as a small section of a much larger act. It appeared in Pub. L. 98-473, Title II (the Crime Control Act of 1984), Chapter X (Miscellaneous Violent Crime Amendments), Part G (Crimes Against Family Members of Federal Officials), §1008(a). As in *Ladner*, the legislative history of § 115 does not discuss the unit of prosecution. *Ladner v. United States*, 358 U.S. 169, 175–76 (1958). Section 115's location in the United States Code is in a

chapter titled, "Chapter 7—Assault." Likewise, this does not offer much in the way of determining unit of prosecution. However, the text of the statute already provides an unambiguous direction on the unit of prosecution.

## Conclusion

The United States respectfully requests that Defendant's request for relief be denied.

Dated this 18th day of February, 2026.

                                              RONALD A. PARSONS, JR.
                                              United States Attorney

                                              */s/ Benjamin Schroeder*
                                              _____
                                              Benjamin Schroeder
                                              Assistant U.S. Attorney
                                              515 9th Street, Suite #201
                                              Rapid City, SD 57701
                                              Telephone: (605)342-7822
                                              E-Mail: Benjamin.Schroeder@usdoj.gov